UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA V., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 16-9306-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.
## **INTRODUCTION**

On December 16, 2016, plaintiff filed a complaint against defendant, Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both parties have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") erred in characterizing plaintiff's past relevant work. Motion for

Summary Judgment ("P. Mem.") at 6-12.

Having carefully studied the parties' written submissions, the decision of the ALJ, and the Administrative Record ("AR"), the court concludes that, as detailed herein, substantial evidence supports the ALJ's characterization of plaintiff's past relevant work, and although the ALJ erred in her earnings finding, that error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-eight years old on her alleged disability benefit onset date, completed sixth grade in Mexico. AR at 43, 94, 111. She has past relevant work in the hybrid position of an interpreter and receptionist, and as an in-home caregiver. *Id.* at 54-55.

On May 10, 2013, plaintiff filed applications for a period of disability, DIB, and SSI. *Id.* at 94, 111. Plaintiff alleged she has been disabled since August 31, 2012 due to ripped cartilage, carpal tunnel syndrome, depression, back pain, and diabetes. *Id.* The Commissioner denied plaintiff's application, after which plaintiff filed a request for reconsideration, which was denied. *Id.* at 132-36, 137, 138-41. Plaintiff then filed a request for a hearing. *Id.* at 143.

On May 5, 2015, plaintiff, represented by counsel and aided by a Spanish interpreter, appeared and testified at a hearing before the ALJ. *Id.* at 39-59. The ALJ also heard testimony from Corinne Porter, a vocational expert ("VE"). *Id.* at 52-58. On June 17, 2015, the ALJ denied plaintiff's claim for benefits. *Id.* at 20-32.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 31, 2012, the alleged onset date. *Id.* at 22.

At step two, the ALJ found plaintiff suffered from the following severe

impairments: bilateral carpal tunnel syndrome status-post right release; and history of supraspinatus tendon tear and rotator cuff tear in left shoulder, status-post two surgeries. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal the severity of one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.[1] *Id.* at 25.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that plaintiff had the RFC to perform light work, with the limitations that plaintiff could: lift and carry up to twenty pounds occasionally, and ten pounds frequently; stand and walk approximately six hours in an eight-hour workday, and sit approximately six hours in an eight-hour workday, with normal breaks; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; occasionally reach overhead with the bilateral upper extremities; frequently finger with the bilateral upper extremities; and perform no repeated forceful gripping or operation of vibrating tools with the bilateral upper extremities. *Id.* at 25.

The ALJ found, at step four, that plaintiff could perform past relevant work in the hybrid position of an interpreter and receptionist. *Id.* at 31. The ALJ therefore concluded plaintiff was not suffering from a disability, as defined in the Social Security Act at any time from August 31, 2012, the alleged onset date,

---

[1] The Social Security Administration issued new regulations effective March 27, 2017. Unless otherwise stated, all regulations cited in this decision are to those effective for cases filed prior to March 27, 2017.

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

through June 17, 2015. *Id.* at 32.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-13. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

4

1992)).

## IV.

## **DISCUSSION**

As set forth above, the ALJ found plaintiff could perform her past relevant work as a combination interpreter and receptionist. AR at 31. Plaintiff argues the ALJ erred in characterizing her past work. P. Mem. at 6-12. Plaintiff contends the record is unclear as to the nature of this employment, and the job in question may have involved not just clerical office work but also work as a caregiver. She argues if the work was a hybrid of home care and clerical work, then the ALJ erred in classifying her past relevant work according to the least demanding function. And if the work she did was only clerical work and was that which was reported in her earnings as self-employment, then such work would be less than substantial gainful activity.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). A claimant's former occupation qualifies as past relevant work if it was performed within the last fifteen years, lasted long enough for him or her to learn to do it, and produced enough income to qualify as substantial gainful activity. 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).

"Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he or she] worked before." 20 C.F.R. § 404.1572(a); 20

C.F.R. § 416.972(a). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b); 20 C.F.R. § 416.972(b). If the claimant has earned less than a certain minimum amount, then the ALJ will generally conclude that the activity was not substantial gainful activity. *See* 20 C.F.R. § 404.1574(b); 20 C.F.R. § 416.974(b). Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

Here, the ALJ found plaintiff had past relevant work in two positions. First, the ALJ found plaintiff worked for IHSS as an in-home caregiver from 2007 to 2012, with annual wages generally over $15,000. AR at 31. Second, the ALJ found plaintiff worked for Dominguez Investigation in the hybrid position of an interpreter and receptionist from June 2004 to May 2007. *Id.* The ALJ also looked at plaintiff's reported earnings from Gilbert Dominguez from 1997 through 2001, with wages exceeding $20,000 per year, to conclude the work for Dominguez Investigation was past relevant work. *Id.* In doing so, the ALJ apparently assumed the work plaintiff did for Gilbert Dominguez was the same as the work she did for Dominguez Investigation, when in fact there is nothing in the record to indicate Gilbert Dominguez had anything to do with Dominguez Investigation; the two may be utterly unconnected. Indeed, while plaintiff reported working as a secretary for Dominguez Investigation, plaintiff testified that Gilbert Dominguez was "one of the older people that she cared for." *Id.* at 46, 228.

A.   <u>The Evidence of Record</u>

The ALJ based her findings regarding plaintiff's past work on three types of evidence in the record. First, in her June 28, 2013 Work History Report, plaintiff reported working as a caregiver for IHSS from May 2007 to August 2012, and as a secretary for Dominguez Investigation from June 2004 to May 2007. *Id.* at 228.

As a secretary at Dominguez Investigation, plaintiff stated she worked five hours a day, five days a week, earning $10 per hour. *Id.* at 230. She described her work duties as making copies, answering phones and taking messages, and sitting for most of the day writing and reading. *Id.* She said she had to lift and carry file boxes weighing up to 20 pounds. *Id.*

Second, plaintiff's reported earnings from 1997 through 2012 showed the following:

|  | **Earnings from IHHS or Maxim Healthcare** | **Earnings from Gilbert Dominguez** | **Earnings from Self-Employment** |
|---|---|---|---|
| **1997** | $4,602.74 | $3,696.50 |  |
| **1998** | $8,524.51 | $17,410.00 |  |
| **1999** |  | $21,502.00 | $7,393.00 |
| **2000** |  | $21,995.00 | $6,785.00 |
| **2001** |  | $22,308.00 | $8,026.00 |
| **2002** |  | $2,145.00 | $6,845.00 |
| **2003** |  |  |  |
| **2004** |  |  |  |
| **2005** |  |  | $6,580.00 |
| **2006** | $11,439.25 |  | $5,755.00 |
| **2007** | $9,582.30 |  |  |
| **2008** | $18,642.60 |  |  |
| **2009** | $15,160.50 |  | $7,502.00 |
| **2010** | $16,692.30 |  |  |
| **2011** | $16,224.30 |  |  |
| **2012** | $11,783.70 |  |  |

*See* AR at 201-04. Thus, plaintiff's earnings records show her earnings from Gilbert Dominguez ended in 2002; she had no reported earnings ever from Dominguez Investigation, including none from 2004 to 2007 when she stated she worked there; and no reported earnings of any kind, including from self-

employment, in 2003 and 2004.

Third, at the hearing before the ALJ, plaintiff testified regarding her work. Her attorney asked if she ever worked for Gilbert Dominguez, and she responded that he was "one of the older people that she cared for." *Id.* at 46. The attorney then asked if she ever worked as a secretary, and she replied, "Not actually a secretary, I was doing the copies, you know, sometimes answer the phone." *Id.* She said she did this work for "investigators." *Id.* at 47. She also would listen to recordings in Spanish and then tell the investigator what the speakers were saying. *Id.* After testifying to additional copy work, the following testimony was given, with plaintiff's attorney asking the first question, and plaintiff responding through an interpreter:

> Q    Okay. What's the most you had to lift on that job?
>
> A    About 160 pounds, yeah, 160 pounds.
>
> ALJ: Wow.
>
> CLMT:    Was the people – she would have to put people in a wheelchair and ask them to move and then at night lift them from their wheelchair and put them down in the bed and change their diapers and all that was very heavy work.

*Id.* Plaintiff did not explain whether she meant her job at the investigators also involved caring for individuals, such as by lifting them from their wheelchairs and changing their diapers, or whether she was then testifying about a different job, and neither her attorney nor the ALJ asked her to clarify this. Later in the hearing she testified further in response to the vocational expert's questions about her work interpreting Spanish recordings and making copies for the investigators, but did not mention any additional caregiving work. *Id.* at 53.

Fourth, although not specifically cited by the ALJ in this regard, a medical evaluation from August 2003 suggests a possible reason why plaintiff's reported earnings from Gilbert Dominguez ended in 2002. Plaintiff reported that in

8

December 2001 she was caring for an elderly gentleman named Steven Strong when she hurt herself while lifting him. *Id.* at 497, 499; *see also id.* at 284. She stated she "had been doing this type of work for approximately six years." *Id.* at 497. She reported Mr. Strong "ultimately died" and she then "sought medical attention in March of 2002." *Id.* at 497-98. It is possible that at that time she stopped all of her in-home care work for all her clients, including Gilbert Dominguez.

### B. Substantial Evidence Supports the ALJ's Finding That Plaintiff's Caregiver and Interpreter/Receptionist Jobs Were Separate

Plaintiff's principle argument is that the record is unclear as to whether her work at Dominguez Investigation also involved caregiving for Gilbert Dominguez, and therefore the ALJ erred in deeming her caregiver work to be separate from her work as a receptionist and interpreter. But although plaintiff's testimony at the hearing was somewhat ambiguous, substantial evidence supports the ALJ's finding that these were separate and unrelated jobs.

In assessing whether or not a claimant can perform past relevant work, the claimant's assessed RFC is compared with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b). An ALJ may not simply classify a claimant's past relevant work solely based on the least demanding functions of the position. *See Valencia v. Heckler*, 751 F.2d 1082, 1086-87 (9th Cir. 1985) (ALJ erred by classifying claimant's past work as a tomato sorter requiring light work, when claimant's past work was actually as a kitchen helper and agricultural worker requiring medium work). Plaintiff argues that her hybrid interpreter/receptionist job at Dominguez Investigation also may have involved the more physically demanding work of a caregiver, which her RFC precluded.

Plaintiff maintains the record suggests she may have been doing caregiving work for Gilbert Dominguez at the same time she was doing clerical work for Dominguez Investigation, but this is mere surmise from the fact that both

employers share the name Dominguez in common, and is otherwise contrary to the record. First, in her Work History Report, plaintiff clearly stated she worked as a secretary for Dominguez Investigation from June 2004 to May 2007 doing clerical and interpretation work, and did not begin caregiving work again until May 2007, when she went back to work for IHHS. AR at 228, 230. Second, although her earnings reports do not show any work for Dominguez Investigation, they do reflect a break in caregiving between 2002, when she apparently stopped caring for Gilbert Dominiguez, and 2006, when she started working for IHHS again. *See id.* at 202-03. While this indicates plaintiff was off by a year as to when she again began working for IHHS, there is no indication of any overlap between her caregiving and her work as a receptionist and interpreter for investigators. Further, the earnings records that show she worked for Gilbert Dominguez for six years, with only minimal earnings in 2002, are consistent with her statements in 2003 that she was injured while caring for another elderly man, Mr. Strong, in December 2001 and sought medical attention when Mr. Strong died in early 2002. *See id.* at 497-98. It is curious that her earnings records principally show earnings from Gilbert Dominguez from 1998 to 2001, but they also show earnings from self-employment during those years, which could have been payment for her care of Mr. Strong. And that she apparently cared for at least two older men during that time is consistent with her hearing testimony that Gilbert Dominiguez was "one of the older people" she cared for. *See id.* at 46.

As such, there is nothing in the record to indicate plaintiff was caring for Gilbert Dominguez in the 2004-07 time frame when she reports working for Dominguez Investigation. Indeed, the earnings reports indicate she stopped caring for Gilbert Dominiguez in early 2002, shortly after she was injured while lifting Mr. Strong. There is simply nothing in the record to suggest plaintiff's clerical and interpretation work for the investigators also involved caregiving. That plaintiff suddenly started testifying about her work as a caregiver at the hearing

was somewhat confusing, but does not suggest plaintiff ever held a hybrid caregiver/receptionist/interpreter position, which would be quite contrary to plaintiff's own Work History Report.

Plaintiff argues the court should disregard her Work History Report because she completed it before she was represented by counsel and her understanding of English is limited. At the hearing, plaintiff testified that she speaks a little English but does not understand some words. *Id.* at 43. Yet plaintiff was assisted by an interpreter and counsel at the hearing, and there she still testified substantially consistent with what she reported in her Work History Report as to the work she performed for Dominguez Investigation. *See id.* at 46-47, 53, 230. Plaintiff now also claims she was not qualified to work as a certified interpreter, but plaintiff did not testify she was a certified interpreter. Further, the VE testified, and the ALJ found, that someone with plaintiff's RFC could perform her work as an interpreter/receptionist both as generally and actually performed. *Id.* at 32, 56. Thus, even if plaintiff's abilities did not technically match what the Dictionary of Occupational Titles requires for an interpreter, since she could perform her past work as she actually performed it, any error was harmless.

To the extent plaintiff now wishes to argue her work at Dominguez Investigation included caregiving work, she failed to clarify this at the hearing when she was represented by counsel. The VE clearly found her work as a caregiver and her work as a interpreter/receptionist were separate positions, just as she stated in her Work History Report. *Id.* at 54-55. Plaintiff's counsel made no objection to this characterization, did not have further questions for plaintiff or the VE after the VE testified, and did nothing to elicit testimony that in any way contradicted her Work History Report. *See id.* at 58. As such, plaintiff has waived this argument. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal").

11

In short, substantial evidence in the record supports the ALJ's finding that plaintiff's work as a hybrid interpreter and receptionist was separate from her work as a caregiver.

**C.    Substantial Evidence Shows Plaintiff's Work as an Interpreter/Receptionist Was Substantial Gainful Activity**

To qualify as past relevant work, plaintiff's work as a hybrid interpreter/receptionist must have produced enough income to qualify as substantial gainful activity. *See* 20 C.F.R. § 404.1560(b)(1). The ALJ concluded that plaintiff's work at Dominguez Investigation constituted substantial gainful activity with the following reasoning:

> [Plaintiff] indicated in her work history report that she worked as a secretary for Dominguez Investigation from June 2004 to May 2007 (Exhibit 4E/1). The detailed earnings query showed that she worked for Gilbert Dominguez from 1997 through 2001. The work for Gilbert Dominguez was still performed within the past 15 years as it was performed in 2001. . . . Furthermore, the wages received from Gilbert Dominguez easily exceeded $20,000 in years she was employed there (see Exhibit 6D).

AR at 31. For the reasons discussed above, the ALJ clearly erred in determining plaintiff's work for Dominguez Investigation in 2004-07 was substantial gainful activity based on her earnings from Gilbert Dominguez up through 2001. The ALJ wrongly conflated the two jobs, and thus her findings as to plaintiff's earnings from Dominguez Investigation were not supported by the evidence in the record.

This error, however, was harmless. As discussed above, plaintiff's work for Dominguez Investigation is not included in her earnings record. Indeed, the earnings report shows no earnings in 2003 or 2004, and only shows earnings from 2005 to 2007 from self-employment or as a caregiver. Nonetheless, plaintiff's

testimony and submitted work reports were consistent regarding the nature of her work for Dominguez Investigation. *Id.* at 46-48, 53, 212, 228, 230. Her Work History Report states she was paid $10 per hour and worked twenty-five hours per week at Dominguez Investigation. *Id.* at 212. This would make her earnings $1000 a month, which is sufficient to constitute substantial gainful activity during the years 2004 to 2007. *See* https://www.ssa.gov/OACT/COLA/sga.html. Although there are no earnings records reflecting this work, plaintiff's testimony and report are substantial evidence that her work at Dominguez Investigation was past relevant work. *See Lewis*, 236 F.3d at 515 (plaintiff's earning record is presumptive sign of whether a job is substantial gainful activity but not dispositive); *Kay v. Berryhill*, 2017 WL2986580, at *3 (C.D. Cal. July 13, 2017) (plaintiff's sworn testimony and work history report was substantial evidence of past relevant work when there was no earnings record). Therefore, the ALJ's erroneous findings with respect to plaintiff's earnings were harmless, since the record contains unchallenged evidence that her actual earnings were sufficient to constitute substantial gainful activity. *See Carmickle*, 533 F.3d at 1162-63 (an ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination").

In sum, substantial evidence in the record supports the ALJ's finding that plaintiff had past relevant work as a hybrid interpreter and receptionist, and that hybrid position did not include work as a caregiver. Although the ALJ erred in relying on some of plaintiff's earlier and unrelated earnings to find her work as an interpreter/receptionist was substantial gainful activity, that error was harmless.

//

//

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (docket no. 24) is DENIED, and Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits and dismissing the complaint with prejudice.

DATED: March 20, 2019

SHERI PYM
United States Magistrate Judge